UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-10048 |
| ) | |
| JOSHUA CARRELL, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendant Carrell's Motions for Compassionate Release (Docs. 103, 107) and the Government's Response (D. 110). For the reasons set forth below, Defendant's Motions are DENIED.

#### BACKGROUND

On March 1, 2004, Joshua Carrell and his co-defendant, Robert Trader, robbed the National City Bank in Peoria, Illinois. (D. 110 at 2). Defendant approached the teller who was counting and wrapping money from the night depository, placed a revolver on the counter in front of her, told her to put the cash in his bag, and said "it's as easy as that." *Id*. Defendant left the bank with $24,000, gave $2,000 to Mr. Trader, and kept $22,000 for himself. *Id*.

On March 9, 2004, he was arrested on drug charges. *Id*. On February 9, 2005, Defendant pled guilty to Count 2 of the Indictment charging him with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). (Minute Entry 2/9/2005). On May 19, 2005, this Court sentenced him to 150 months' imprisonment and five years of supervised release. (D. 53).

After serving nearly 14 years in prison, Defendant began his term of supervised release on January 22, 2019. (D. 107 at 1). On December 18 and 23, 2019, Defendant tested positive for

methamphetamine and cocaine. *Id*. at 1-2. A petition to revoke his supervised release was filed, but the Court allowed him to join an in-patient drug treatment program. *Id*. at 2. He completed the treatment successfully and was released from custody to attend out-patient drug treatment. *Id*. Unfortunately, he tested positive again for methamphetamine and cocaine on April 18, 2020. *Id*. During his final revocation hearing on June 22, 2020, he admitted to the violations and was sentenced to 16 months' imprisonment and two additional years of supervised release. (D. 101).

Defendant is currently incarcerated at USP Marion in Marion, Illinois. (D. 107 at 6). His projected release date is June 14, 2021. (D. 110 at 5).

On September 10, 2020, Defendant filed a *pro se* Motion for Compassionate Release while he was at the Peoria County Jail awaiting transport to the Bureau of Prisons (BOP). (D. 103; D. 107 at 4). The Court appointed the Federal Public Defender's Office to represent him. (Text Order 9/11/2020). On October 7, 2020, counsel filed an Amended Motion for Compassionate Release. (D. 107). On October 8, 2020, the Government filed its Response, urging the Court to deny Defendant's Motion based on the merits and because he failed to exhaust administrative remedies. (D. 110). This Order follows.

## LEGAL STANDARD

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A).

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with the policy statement." USSG § 1B1.13. The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons."

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(1).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the

3

extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

## DISCUSSION

### A. Defendant Failed to Exhaust Administrative Remedies.

Under section 3582(c)(1)(A), a defendant can file a motion for compassionate release after requesting the warden of his facility to bring such a motion on his behalf. If 30 days pass without a response, a defendant can file a motion in court. *Id*. Since COVID-19 has wreaked havoc on this country, many federal judges, including those in the Central District of Illinois, have considered whether to waive the exhaustion requirement. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19. *See e.g. United States v. Anderson,* 2020 WL 2521513 (C.D. Ill. May 18, 2020).

Here, Defendant admits that he has not exhausted his administrative remedies, but he argues that this Court has discretion to consider his request. (D. 107 at 4). The BOP suspended all transfers in March due to the pandemic. (D. 107 at 3). Consequently, Defendant remained at the Peoria County Jail for months until it was safe to transfer to USP Marion. While awaiting transfer, the Peoria County Jail experienced an outbreak of COVID-19 when approximately 40 inmates and several guards tested positive. *Id*. at 4. On September 9, 2020, Defendant filed his Motion for Compassionate Release while he was still at the jail. (D. 103; D. 107 at 4). After he was transferred to USP Marion, he did not file a request with the Warden for compassionate release. (D. 110 at 10). As a result, the Government argues he failed to exhaust his administrative remedies. *Id*.

One judge in this district granted a motion for compassionate release before the defendant was taken into BOP custody. *United States v. Smith*, No. 09-CR-20014 (C.D. Ill. May 28, 2020). In *Smith*, the defendant was in the custody of the Illinois Department of Corrections waiting to be transferred to a BOP facility when the Court ruled on his motion for compassionate release. The Court stated:

> [R]equiring Defendant to wait until his arrival at a BOP facility in order to submit a request for compassionate release would, at best, result in delay and possible exposure to COVID-19 while his request is processed. At worst, Defendant would be transferred to another facility within the 30-day review period, creating a real possibility that any administrative remedy would be effectively unavailable to him until it is too late.

*Id*. at 4. Under the circumstances, the Court in *Smith* found that the exhaustion requirements in 18 U.S.C. § 3582(c) should be excused. *Id*.

The key difference between *Smith* and the case at hand is that Mr. Carrell failed to request compassionate release from the Warden after he transferred to USP Marion. He filed his *pro se* Motion while at the Peoria County Jail, transferred to USP Marion sometime between September 10, 2020, when he filed his *pro se* Motion and October 7, 2020, when he filed his Amended Motion. Why he neglected to submit a request for compassionate release to the Warden at USP Marion is unclear. Therefore, the Court finds that Defendant failed to exhaust his administrative remedies under 18 U.S.C. § 3582(c)(1)(A) before filing his Motion for Compassionate Release.

**B. The Applicable 18 U.S.C. § 3553(a) Sentencing Factors and Policy Statement Weigh Against Release.**

Even if the Court found that Defendant exhausted his administrative remedies, the Motion would be denied on the merits. Defendant's criminal history includes, among other offenses, a conviction for armed bank robbery. His disciplinary record while incarcerated was replete with infractions, including assaulting another inmate, fighting, and possessing a dangerous weapon. (D.

110-1). After his release from prison, he violated the terms of his supervised release repeatedly. (Docs. 74, 92) The Court acknowledges that Defendant suffers from substance abuse issues, which have been extremely difficult for him to overcome. (D. 107 at 10). Moreover, Defendant does not have a suitable release plan. (D. 105). Based on his criminal history and characteristics, the Court finds that Defendant is a danger to the community and his release is unwarranted under the applicable § 3553(a) factors.

## CONCLUSION

Defendant's Motion for Compassionate Release [103] and Amended Motion for Compassionate Release [107] are DENIED.

ENTERED this 30th day of October, 2020.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge